11th Court of Appeals
Eastland, Texas
Opinion
 
Michael R. Feldman
            Appellant
Vs.Nos. 11-02-00339-CR, 11-02-00340-CR, 11-02-00341-CR, 11-02-00342-CR, 
 11-02-00343-CR, & 11-02-00344-CR -- Appeals from Dallas County
State of Texas
            Appellee
 
            In a single trial, the jury convicted Michael R. Feldman as charged in six separate
informations of the offense of violating a protective order. The trial court assessed punishment in
each case at confinement for 365 days and a $150 fine, but the court suspended the imposition of the
sentence and placed appellant on community supervision for 2 years. We reverse and render in
Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR; and we affirm in Cause Nos.
11-02-00342-CR, 11-02-00343-CR, and 11-02-00344-CR. 
            In Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR, appellant has
briefed four points of error. In the other three causes, appellant presents three points of error. The
first three points of error in all six briefs are similar. In the first point, appellant contends that the
evidence is legally insufficient to prove that he had notice of the existence of the protective order. 
In the second point, appellant asserts that the trial court erred in denying appellant’s request for a jury
instruction on the issue of notice. In the third point, appellant argues that the trial court erred in
failing to instruct the jury on all of the elements of the offense as provided for in TEX. PENAL
CODE ANN. § 25.07 (Vernon 2003). In the fourth point, appellant contends that the evidence is
legally insufficient to prove that his conduct amounted to a communication under Section 25.07. 
            In order to address the legal sufficiency points, we must review all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). Section 25.07(a)(2) provides in
relevant part that a person commits an offense if, in violation of a protective order, the person
knowingly or intentionally “communicates”: 
(A) directly with a protected individual or a member of the family or
household in a threatening or harassing manner; [or]
 
(C) in any manner with the protected individual or a member of the family or
household except through the person’s attorney or a person appointed by the court,
if the order prohibits any communication with a protected individual or a member of
the family or household. 
Appellant was charged in Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR with
violating a protective order by communicating via letter with his son, Samuel Feldman. Appellant
was charged in Cause Nos. 11-02-00342-CR, 11-02-00343-CR, and 11-02-00344-CR with violating
a protective order by communicating via letter with his ex-wife, Robin Feldman, in a threatening and
harassing manner. 
            The record shows that the Superior Court of King County, Washington, issued a protective
order on January 20, 1999. Although appellant was not present at the hearing in which the protective
order was granted, appellant’s attorney was present. Appellant’s attorney signed the order,
acknowledging that he received a copy. While the protective order was in effect, appellant sent
letters addressed to Samuel. The content of the letters indicated that appellant was aware that Robin
would be reading them. In the letters, appellant made many extremely derogatory remarks about
Robin and also made such threatening and harassing comments as: “I am surprised your mother
didn’t do to you what Susan Smith did to her two young sons”; “She is ruining your life and
depriving you of a father and his family. This creature [Robin] must be stopped”; “Some day things
will change and she will get her due”; “[S]he knew I would kill her if she murdered my child!”; and
“When you study about World War II and Hitler, you will understand how if the only Jews Hitler
meant were like the creature [Robin], he would want to kill all Jews.” Robin did not allow Samuel
to see or read the letters from appellant. 
            In his first point of error, appellant contends that there is no evidence that he had notice of
the existence of the order. However, the terms of the protective order were agreed to by appellant’s
attorney, who signed the order and acknowledged that he received a copy of the order. Furthermore,
while appellant, an attorney, was cross-examining Robin, he asked the following questions: 
Q: And didn’t I state -- do you know from your personal knowledge, I stated
that I was afraid to go to the State of Washington because I feared you would have
me arrested? 
 
A: I believe you stated that.
 
Q: And, in fact, as we already mentioned, you’ve got an order of protection
in the State of Washington 10 days prior to the time that I was supposed to first go,
correct?
 
A: Yes. 
            The Texas Court of Criminal Appeals has concluded that the only requirement with respect
to this issue is that the defendant:
[B]e given the resources to learn the provisions; that is, that he be given a copy of the
order, or notice that an order has been applied for and that a hearing will be held to
decide whether it will be issued. The order is nonetheless binding on the respondent
who chooses not to read the order, or who chooses not to read the notice and the
application and not to attend the hearing. 
Harvey v. State, 78 S.W.3d 368, 373 (Tex.Cr.App.2002). In this case, notice that a protective order
had been sought was shown through appellant’s representation at the hearing by his attorney. 
Furthermore, appellant’s knowledge of the existence of the protective order was shown through his
questioning of Robin. We hold that the evidence is sufficient to establish the requisite knowledge. 
See Harvey v. State, supra. Appellant’s first point of error is overruled. 
            In his fourth point, appellant contends that there is no evidence that he communicated with
Samuel. With respect to Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR, the
informations charged that appellant did: 
[T]hen and there intentionally and knowingly communicate directly and indirectly
with SAMUEL FELDMAN...in that the defendant communicated via a letter with
complainant, in violation of an order issued by the Superior Court of King County,
Washington.
  
            “Communication” was defined in the jury charge as “information given, the sharing of
knowledge by one another; conference; consultation or bargaining preparatory to making a contract. 
Intercourse; connection.” That definition was taken from BLACK’S LAW DICTIONARY. The
common meaning of “communicate” is “to make known” or “to pass from one to another.” THE
MERRIAM-WEBSTER DICTIONARY 163 (1997). There is no evidence indicating that Samuel
received, read, or even knew about the letters. Consequently, appellant did not “communicate” with
Samuel. Although appellant clearly attempted to communicate with Samuel, appellant was neither
charged with nor convicted of attempting to violate the protective order with respect to Samuel. 
Furthermore, although Section 25.07(a)(2)(C) makes it an offense to communicate with a member
of the protected person’s household or family, appellant was not charged with violating the
protective order by communicating with a member of Samuel’s household. Therefore, we must
sustain the fourth point of error and reverse the convictions in which Samuel was the complainant: 
Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR. 
            In his second point of error, appellant contends that the trial court erred by denying his
request for a jury instruction on the issue of notice. Appellant requested the following instruction: 
“[U]nless the Defendant is aware of what he is prohibited from doing by a specific court order he
cannot be guilty of knowingly and intentionally violating that court order.” The trial court denied
appellant’s request. 
            In Harvey, the court stated that, in a trial for the violation of a protective order, the jury
charge “should include a definition of the term ‘in violation of an order issued under’” the applicable
statutes. Harvey v. State, supra at 373. The court defined the term as:
[I]n violation of an order that was issued under one of those statutes at a proceeding
that the defendant attended or at a hearing held after the defendant received service
of the application for a protective order and notice of the hearing.
Harvey v. State, supra at 373. The court also stated that, as defined, that term “is in effect a
requirement of a culpable mental state for that element.” Harvey v. State, supra at 373. Although
the protective order at issue in Harvey differed from the one at issue in this case because it was not
issued by another jurisdiction, the Harvey court noted that it had not overlooked protective orders
that were issued by other jurisdictions. The Harvey court reasoned that other jurisdictions “likely”
had similar notice provisions. We hold that the trial court in the present case erred by failing to
include a definition similar to the one required by the court in Harvey. 
            Although appellant’s requested instruction was a misstatement of the law under Harvey, it
was sufficient to apprise the trial court of the omission in the charge and, thus, was sufficient to
preserve the error for appellate review. See Francis v. State, 36 S.W.3d 121, 123
(Tex.Cr.App.2000); Chapman v. State, 921 S.W.2d 694 (Tex.Cr.App.1996); Stone v. State, 703
S.W.2d 652, 655 (Tex.Cr.App.1986); see also TEX. CODE CRIM. PRO. ANN. art. 36.15 (Vernon
Supp. 2003). Consequently, we must determine if the error “was calculated to injure the rights of
defendant,” meaning that reversal is required if the accused suffered “some harm” from the error. 
TEX. CODE CRIM. PRO. ANN. art. 36.19 (Vernon 1981); Almanza v. State, 686 S.W.2d 157, 171
(Tex.Cr.App.1985). The actual degree of harm caused by the error must be determined in light of
the entire jury charge; the state of the evidence, including the contested issues and the weight of the
probative evidence; the argument of counsel; and any other relevant information revealed by the
record. Almanza v. State, supra. 
            We hold that the error was not calculated to injure appellant’s rights. Pursuant to the
standard set out in Harvey, appellant need not have attended the hearing or actually been served with
the protective order. Appellant must merely have known that an order had been applied for and that
a hearing was scheduled. The evidence in this case clearly showed that appellant was aware that 
Robin had applied for a protective order, that a hearing was scheduled and held, and that appellant
was represented by his attorney at the hearing. The only question with respect to this issue was
whether appellant actually had knowledge of the specific provisions in the order. Such specific
knowledge, however, is not a requirement of the culpable mental state for the offense of violation
of a protective order. Harvey v. State, supra at 373. After reviewing the entire jury charge, the
evidence, the contested issues, and the jury arguments, we conclude that the omission in the jury
charge did not cause “some harm” to appellant. Appellant’s second point of error is overruled. 
            In his third point of error, appellant argues that the trial court erred by failing to charge the
jury on all of the elements of the offense. Appellant’s complaint concerns the failure of the
application portion of the jury charge to include the requisite culpable mental state. The jury charge
in each case reads in relevant part:
You are instructed that our law provides that a person commits an offense if,
in violation of an order issued under [the relevant statutes], the person intentionally
or knowingly communicates in any manner with the protected individual or a
member of the family or household except through the person’s attorney or a person
appointed by the court, if the order prohibits any communication with a protected
individual or member of the family or household. 
 
* * *
 
Now, if you find and believe from the evidence beyond a reasonable doubt
that the defendant...did unlawfully then and there intentionally or knowingly
communicate directly or indirectly with [Robin/Samuel] by writing a letter to
[Robin/Samuel], a protected individual, defendant’s said actions were in violation of
a court order, to-wit: a protective order...you will find the Defendant guilty as
charged in the Information. 
            While we agree with appellant that the application portion of the jury charge was erroneous,
we note that appellant did not object at trial to that portion of the jury charge. Therefore, pursuant
to Almanza and Article 36.19, we must review the entire jury charge, the evidence, the arguments
of counsel, and any other relevant information in order to determine whether the error was so
egregious that appellant was denied a fair and impartial trial. We cannot find under the
circumstances of this case that the error was egregious. See Lane v. State, 957 S.W.2d 584, 587
(Tex.App. - Dallas 1997, pet’n ref’d)(concluding that the failure to include a culpable mental state
in an application paragraph did not deny the defendant a fair and impartial trial when the defendant’s
culpable mental state was not a contested issue). It is clear from the record that appellant had the
culpable mental state that was required by Harvey. Appellant, at a minimum, had knowledge that
a protective order had been sought. Appellant was represented by his attorney at the hearing on the
protective order. Furthermore, appellant’s questioning of Robin appears to acknowledge that he was
aware of the order and that he did not visit Samuel in Washington because he feared that he would
be arrested. Appellant’s third point of error is overruled. 
            The trial court’s judgments in Cause Nos. 11-02-00339-CR, 11-02-00340-CR, and 11-02-00341-CR are reversed; and we render a judgment of acquittal in those cases. The judgments of the
trial court in Cause Nos. 11-02-00342-CR, 11-02-00343-CR, and 11-02-00344-CR are affirmed. 
 
                                                                                                PER CURIAM 
 
December 18, 2003
Do not publish. See TEX.R.APP.P. 47.2(b). 
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.